UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOAN MCGUIRE, Individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

                                                  CASE NO. 8:18-cv-02995-JSM-SPF

INTELIDENT SOLUTIONS, LLC, and
COAST DENTAL SERVICES, LLC,

    Defendant.
_____/

## MOTION TO ABATE SETTLEMENT PAYMENT OBLIGATIONS
## AND INCORPORATED MEMORANDUM OF LAW

Defendants, Coast Dental Services, LLC and Intelident Solutions, LLC (collectively, "Coast"), by and through its undersigned counsel, hereby move this Court for an order addressing the doctrine of impossibility of performance as it relates to the enforceability of the parties' Settlement Agreement and Release, as approved by this Court's September 28, 2020 Order, and abating the payment obligations based on the impossibility and extreme impracticability arising from the unforeseen ongoing and critical effects of the COVID-19 pandemic on Coast's operations and revenue. In support, Coast states as follows:

## FACTUAL BACKGROUND

### A. Procedural History

1. Coast provides management, administrative, and support services to dental practices. At the time this suit was filed, Coast did so for 120 locations—91 in Florida, 26 in Georgia, 2 in Nevada and 1 in Texas.

2. In December 2018, Plaintiff, on behalf of herself and others similarly situated, filed a one-count complaint under the FLSA (Doc. 1), alleging a failure to pay overtime compensation.

3. Prior to the filing of the Complaint, the parties mediated the dispute, but did not settle.

4. Nearly a year later, the parties agreed to mediate again and, in November 2019, they moved to stay the case pending the outcome (Doc. 73).

5. Although this second mediation (held in January 2020) was unsuccessful, the mediation stayed open and the parties continued to negotiate through the mediator over the next five months, asking the Court to extend the litigation stay four more times (Docs. 77, 79, 81, 83).

6. On May 13, 2020, the parties filed a Joint Status Report and Notice of Settlement, advising the Court that they had executed a "Settlement Term Sheet" and were preparing a formal settlement agreement to be filed with the Court for approval (Doc. 84).

7. The parties executed the Settlement Agreement and Release ("Settlement Agreement") on June 12, 2020, and submitted it to the Court on June 23, 2020.

8. On September 2, 2020, Magistrate Judge Sean Flynn entered a Report and Recommendation approving, for the most part, the parties' settlement (Doc. 90). And on September 29, 2020, this Court entered its Order adopting the Report and Recommendation (Doc. 91).

9. Pursuant to the Order, this Court retained "jurisdiction to enforce the settlement … for 180 days after issuance of the settlement checks." *Id.*[1]

10. Based on the date of entry of the Order, the settlement required Coast to make payment into a "Gross Fund" in the amount of $1,320,000.00 as follows:

   a. $447,990.30 within 75 days of the Effective Date—January 12, 2021; and

   b. $872,009.70 within 105 days of the Effective Date—February 11, 2021.

## B. Unforeseen Circumstances and Debilitating Economic Conditions.

11. This Motion stems from the bilateral (and likely universal) misapprehension of the governmental control to be exercised over businesses nationwide and the economic realities facing the globe existing during the parties' negotiations leading up to the parties reaching agreement in May 2020, along with

---

[1] Pursuant to this Court's retention of jurisdiction in the Order adopting the Report and Recommendation and approving the Settlement Agreement, this Court has exclusive jurisdiction to interpret the enforceability of the Settlement Terms based on the doctrine of impossibility. *See, e.g., Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 378, 114 S.Ct. 1673, 1675–76, 128 L.Ed.2d 391 (1994) (finding court has ancillary jurisdiction to enforce settlement agreement where jurisdiction is retained in order approving the settlement). Under other circumstances, Coast would have sought declaratory relief from a court of competent jurisdiction, and will do so if there is a challenge to this Court's jurisdiction.

the financial impact and uncertainties arising from the COVID-19 global pandemic and government regulations aimed at slowing viral spread which followed execution of the Settlement Agreement. In short, what the parties believed to be true when they negotiated and settled is now demonstrably untrue.

12. The global pandemic caused unforeseen and economically devastating effects on businesses across countless sectors of the economy. Discussing a retail business, Pier 1 Imports, a Virginia bankruptcy court described the pandemic's effects succinctly:

> No constituency in these cases predicted that the world would effectively grind to a halt. But, so it did. In the weeks and months that followed the Petition Date, this country has shuttered under mandatory stay-at-home orders and mandatory closures of 'nonessential' retail businesses, like the Debtors. As of March 31, 2020, '[a]t least 33 states, 89 counties, 29 cities, the District of Columbia, and Puerto Rico [had] issued 'stay at home' or 'shelter in place' orders' effectively closing the Debtors' stores. With their stores shuttered, revenue dried up overnight.

*In re Pier 1 Imports, Inc.*, 615 B.R. 196, 198 (Bankr. E.D. Va. 2020).

13. Coast was not spared from the impact of the pandemic and resulting government regulations.

14. Coast's ability to obtain supply and labs from China slowed in February 2020. In March 2020, due to the spread of the virus across the United States, availability of Personal Protective Equipment ("PPE") like surgical masks was constrained, and appointments for all Coast's dental offices declined precipitously.

15. By late March of 2020, all of Coast's offices were closed due to express government order[2] or pursuant to guidance issued by the Center for Disease Control ("CDC") and American Dental Association ("ADA"). All of Coast's approximately 1,000 employees were furloughed on March 20, 2020.

16. By May 2020, however, the economy had generally begun to reopen and Coast started reopening offices. The prevailing view at that time was that the effects of the pandemic would continue to diminish, governmental restrictions would be lifted, and operations would generally return to normal by the Fall of 2020.

17. It was during this time that the parties' settlement discussions reached their ultimate conclusion via the Settlement Term Sheet executed on May 13, 2020, at which time Coast believed, consistent with the general national consensus, that a return to normal operations in the Fall of 2020 would allow it to make the settlement payments in the time frame set forth in the Settlement Agreement.

18. But recovery has been much slower than anticipated in May 2020 for a number of unexpected reasons out of Coast's control, including:

(a) With the Federal stimulus providing $600/week for unemployment, it was difficult to bring staff back to offices;

(b) Many dentists were reluctant and fearful to return to treatment because of the risk of infection;

---

[2] Pursuant to Governor DeSantis' March 20, 2020 Executive Order 20-72, all dental offices were prohibited from providing any medically unnecessary procedures, and "all health care practitioners licensed in the State of Florida, including dentists, shall immediately cease performing these elective services."

  (c)  PPE was difficult to acquire, and even when available, it was double to triple the cost;[3]

  (d)  Pursuant to ADA and CDC guidance, patient appointments were required to be limited and spaced out to comply with social distancing; and

  (e)  The general public is generally avoiding going to the dentist—a medical discipline exclusive to the mouth—given the nationwide direction to wear a mask and cover the mouth and nose at all times.

19. These challenges continue to this day as a result of the slow delivery and roll out of the COVID-19 vaccine(s), and the recent appearance of a more virulent form of COVID-19 that is reigniting many of the same fears that existed at the outset of the pandemic in March and April 2020.

20. As a direct result of the unexpectedly slow recovery from the pandemic, Coast has permanently closed 10 offices, and divested its two offices in Nevada.

21. Even those offices that reopened have had to be closed for extended periods pursuant to ADA and CDC guidelines due to staff exposure to COVID-19.

22. Six of Coast's offices are currently temporarily closed because either there are still not enough dentists and/or staff willing to come back to work sufficient to operate them, or due to illness. It is unknown when or if those locations will reopen.

---

[3] On at least two occasions, shipments of PPE coming from China were confiscated by the Chinese government or at the United States port of entry.

23.     In all, the cumulative days Coast officers were able to open from May 2020 through December 2020 decreased by over 30% compared to the same period in 2019. And patient appointments decreased by nearly 27% during this period.

24.     Coast's revenue similarly sharply declined from May 2020 through December 2020. Compared to the same period in 2019, Coast's revenue declined by 31%, which led to millions of dollars in losses in 2020.

25.     All of the above has made it impossible or extremely impracticable for Coast to timely perform its payment obligations under the Settlement Agreement, an agreement entered into based upon assumptions about the ability of Coast to operate during an expected pandemic recovery that were markedly incorrect.

26.     Accordingly, and for the reasons set forth in the memorandum of law, below, Coast requests this Court determine the Settlement Agreement is impossible or extremely impracticable to implement or enforce under the circumstances, based on a bilateral mistake of facts relating to the pandemic, and abate the payment obligations of the Settlement Agreement for one year, with Coast to pay interest on all abated settlement payments.[4]

---

[4] Based on current forecasts of vaccine production and distribution, it is expected that the majority of the country will be vaccinated by Fall 2021, sufficient to allow the country to return to normality, and after which Coast expects the pent-up demand and normal operations will allow its business to rebound to pre-pandemic levels.

## MEMORANDUM OF LAW

While the circumstances of COVID-19 have not yet been widely addressed by courts, the general law applicable to the doctrine of impossibility is well established. In Florida, the doctrine of impossibility of performance "refers to those factual situations, too numerous to catalog, where the purposes for which the contract was made, have, on one side, become impossible to perform.'" *Ashraf v. Swire Pac. Holdings, Inc.*, 752 F. Supp. 2d 1266, 1270 (S.D. Fla. 2009), quoting *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.*, 174 So.2d 614, 617 (Fla. 2d DCA 1965).

Under the doctrine of impossibility of performance, a party is discharged from performing a contractual obligation which is impossible to perform and the party neither assumed the risk of impossibility nor could have acted to prevent the event rendering the performance impossible. *Gibson v. Lynn Univ., Inc.,* 2020 WL 7024463, at *5 (S.D. Fla. Nov. 29, 2020) citing *Marathon Sunsets, Inc. v. Coldiron*, 189 So. 3d 235, 236 (Fla. 3d DCA 2016).

Impossibility includes extreme impracticability. *Valencia Ctr., Inc. v. Publix Super Markets, Inc.*, 464 So. 2d 1267, 1269 (Fla. 3d DCA 1985); *see also In re Anchor Glass Container Corp.*, 345 B.R. 765, 772 (M.D. Fla. 2006) ("Impossibility means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved.") citing Restatement (First) of Contracts § 454 (1932).

The "rule in Florida" ultimately turns on "whether the change was foreseeable." *Cook v. Deltona Corp.,* 753 F.2d 1552, 1558 (11th Cir. 1985)

> [C]hange is what impossibility is about. As Professor Gilmore put it, it arises as a defense when "the real world has in some way failed to correspond with the imaginary world hypothesized by the parties to the contract." G. Gilmore, *The Death of Contract* 81 (1974). By recognizing impossibility as a sort of 'escape hatch' from the self-made chamber of contractual duty, the courts have recognized that absolute contractual liability is economically and socially unworkable. Impossibility accommodates the tension between the changes a party bargains to avoid and the changes, unbargained for and radical, that make enforcement of the bargain unwise.
>
> **Thus, it seems to us that the most profitable approach to an impossibility claim is not to pass on the relative difficulty caused by a supervening event, but to ask whether that supervening event so radically altered the world in which the parties were expected to fulfill their promises that it is unwise to hold them to the bargain**.

*Id.* (emphasis added).

"The important question in an impossibility inquiry is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract." *Ferguson v. Ferguson,* 54 So.3d 553, 556 (Fla. 3d DCA 2011).

Here, the ongoing effects of the pandemic, local, state and federal governmental closures, health guidelines and directives, and the shocking financial impact on Coast's operations caused thereby, all of which were inarguably unanticipated at the time the parties entered into the Settlement Term Sheet, collectively constitutes an intervening act that has made timely performance impossible or extremely impracticable. Indeed, the ongoing adversity caused by the pandemic "has so radically altered the world in which the parties were expected to fulfil their promises" that it would be inequitable

to strictly hold Coast to the timing of its payment obligations pursuant to the Settlement Agreement under current conditions.

This is not a situation where fluctuating market conditions or economic downturn make performance economically burdensome.[5] Nor is it a situation where performance has merely become inconvenient, profitless, and expensive.[6] Instead, it was the truly unforeseeable and wide-ranging effects of a once-in-a-century pandemic, and the slow (if not stalled) recovery from it, that has resulted in Coast's inability to afford to make the Settlement Payments without driving itself out of business or into bankruptcy.

Importantly, Coast does not request that this Court abolish its obligation to make payments pursuant to the Settlement Agreement.  Instead, Coast merely requests this Court determine impossibility or impracticability has made strict compliance with the timing aspects of the Settlement Agreement impossible and abate the obligation to make payments for one year.  And, in the meantime, the amounts due under the Settlement Agreement can bear interest at a prevailing market rate, which Coast agrees to pay when the abatement period concludes and Coast is permitted to resume normal business operations.

---

[5] *See, e.g., See e.g., LSREF2 Baron, LLC v. Beemer & Assocs. XLVII, L.L.C.*, 2011 WL 6838047, at *3 (M.D. Fla. Dec. 29, 2011); *Ferguson,* 54 So. 3d at 556.

[6] *Home Design Center–Joint Venture v. County Appliances of Naples, Inc.,* 563 So.2d 767, 769–70 (Fla. 2d DCA 1990); *City of Tampa v. City of Port Tampa*, 127 So. 2d 119, 120 (Fla. 2d DCA 1961)

The relief requested herein will afford Coast the opportunity to rebound from the unforeseen and unforeseeable effects of the pandemic. Indeed, the unfortunate reality is that there is no feasible alternative to the relief requested—Coast simply does not have the revenue necessary to make the Settlement Payments and continue as a going concern.

WHEREFORE, Defendants, Coast Dental Services, LLC and Intelident Solutions, LLC, hereby request this Court enter an order granting this motion, finding impossibility or extreme impracticability, and abating the payment obligations of the Settlement Agreement for one year, requiring Coast to pay interest on all payments until such time as they are paid, and providing such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP

By: /s/ Steven M. Berman
STEVEN M. BERMAN
Florida Bar No. 856290
E-mail: sberman@shumaker.com
SETH P. TRAUB
Florida Bar No. 022088
E:mail: straub@shumaker.com
101 East Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Phone: (813) 229-7600;
Fax (813) 229-1660
*Counsel for the Defendants*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that beginning on January 13, 2021, through the date of this Motion, the undersigned conferred on multiple occasions with counsel for the Plaintiffs, including Paolo Meireles, Esq. and Logan Pardell, Esq., regarding the relief requested herein. Plaintiffs oppose the relief requested.

*/s/ Steven Berman*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Steven Berman*
